UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

                                                    Case No. 1:21-cr-01224-DHU

  -vs-

RONALD HARRISON,

      Defendant.

## ORDER DENYING DEFENDANT'S OPPOSED EMERGENCY MOTION TO RECONSIDER CONDITIONS OF RELEASE IN LIGHT OF DETERIORATIGN HEALTH CONDITIONS

**THIS MATTER** is before the Court on defendant Ronald Harrison's Opposed Emergency Motion to Reconsider Conditions of Release in Light of Deteriorating Health Conditions, filed on January 4, 2022.[1] Doc. 46. The government opposes Mr. Harrison's motion. Doc. 54. Mr. Harrison did not file a reply to the government's response. *See* Docket. The Court held a hearing on Mr. Harrison's motion on April 1, 2022. See Doc. 63. Because of the extent of the materials that were submitted for the Court's review, the Court took the matter under advisement. For the following reasons, the Court DENIES Mr. Harrison's motion.

On August 11, 2021, Mr. Harrison was charged by criminal complaint with possession with intent to distribute 50 kilograms and more of a mixture and substance containing a

---

[1] Although this motion was filed on January 4, 2022, I did not become aware of it until late March 2022. The motion was not forwarded to me until late March and likely was overlooked because of the reassignment of this case from Judge Browning to Judge Urias on February 15, 2022. Attorneys are encouraged to call the Clerk's Office for Magistrate Judge criminal matters to inquire about pending motions if they are not decided promptly. The Court apologizes for the delay in ruling on this motion

detectable amount of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and assault on a federal agent with a deadly weapon, in violation of 18 U.S.C. § 111(b).  Doc. 1.  On August 16, 2021, the Court held a detention hearing.  *See* Doc. 13.  The Court detained Mr. Harrison, finding first that Mr. Harrison had not rebutted the presumption that he should be detained.  Doc. 15 at 2.  But it also found by a preponderance of the evidence that Mr. Harrison was a flight risk, and by clear and convincing evidence that he was a danger to the community, and that no condition or combination of conditions would alleviate those concerns.  *See id*.  The Court based its findings on its view that the evidence against Mr. Harrison was strong, Mr. Harrison's criminal history (including an old escape conviction), and his lack of ties to this district.  *Id*. at 2–3.  The Court was particularly concerned about the circumstances that led to Mr. Harrison's arrest.  It explained:

> The government presented strong evidence at the detention hearing that defendant deliberately rammed his car into a federal officer's car when the federal officer pulled another car over.  Further investigation revealed that defendant was driving his car in tandem with his 19-year-old son.  Defendant's son had [a] substantial amount of marijuana in his car, and when the federal officer stopped the car that defendant's son was driving, defendant rammed his car into the federal officer's vehicle while defendant's son drove away.  The federal officer was injured and was unable to chase down the other vehicle because of defendant's actions.

*Id.* at 3.

On August 25, 2021, a federal grand jury returned an indictment against Mr. Harrison charging him with assault upon a federal officer involving use of a deadly weapon, in violation of 18 U.S.C. §§ 111(a) and (b); conspiracy to possess marijuana with intent to distribute, in violation of 21 U.S.C. § 846; and possession of marijuana with intent to distribute and aiding and abetting, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 18 U.S.C. § 2.  Doc. 17.  A month later, grand jury returned a superseding indictment against Mr. Harrison charging him with the same offenses but adding his son, Khalil Harrison, to the drug charges.  *See* Doc. 24.  Khalil

Harrison was taken into custody on November 29, 2021, Doc. 32, and was released to the third-party custody of his sister on December 2, 2021, Doc. 44.

On January 4, 2022, Mr. Harrison filed this motion asking the Court to reconsider its order of detention or reopen the detention hearing primarily because Mr. Harrison's health has been deteriorating while he's been in custody. *See* Doc. 46 at 2–3. He also argues the evidence at the detention hearing was misleading, and that the dashcam video "lends significant doubt regarding any intent to endanger an officer or anyone else," and that "the incident appears more likely to be an accident than a purposeful event." *See id.* at 4–5. The United States opposes Mr. Harrison's motion. Doc. 54. It argues that the evidence presented at the detention hearing was accurate, and that the dashcam video does not undermine that evidence. *See id.* at 8–9. With respect to Mr. Harrison's heath, the government argues that Mr. Harrison's "medical conditions do not mitigate the fact that he is a danger to the community and a flight risk." *Id.* at 10. The Court agrees with the United States.

First, Mr. Harrison has not provided the Court with a reason to reconsider its original detention order. A Court may grant a motion to reconsider only if it has misapprehended the facts or law, a party's position, or to correct clear error or prevent manifest injustice. *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Motions to reconsider are proper in criminal cases even though the Federal Rules of Criminal Procedure do not specifically provide for them. *United States v. Randall*, 666 F.3d 1238, 1241–42 (10th Cir. 2011). It is arguable that Mr. Harrison's new evidence relating to the stop—specifically, the dashcam video (Def. Exh. C)—suggests that the Court misapprehended the facts surrounding the arrest of Mr. Harrison. The Court has carefully reviewed the dashcam video. Viewing that evidence along with the previous testimony, the photo of the two cars (Def. Exh. F), and the government's

3

proffer that both cars needed to be towed and that the officer sought medical treatment following these events, the Court concludes that its original impression of the events was correct. The Court can discern no other reasonable explanation for what happened other than that Mr. Harrison intentionally rammed his car into the officer's car so that his son could get away. The Court did not misapprehend the facts at the original detention hearing.

Second, although a judicial officer may reopen a detention hearing, she may do so only if she "finds that information exists that was not known to the movant [Mr. Harrison] at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2). The new evidence that Mr. Harrison has presented includes substantial medical records, letters from various family members and friends attesting to Mr. Harrison's good character, and the dashcam video of the officer whose patrol vehicle was struck. As explained above, the Court does not view the dashcam video as showing that Mr. Harrison "accidentally" ran into the officer's vehicle. With regard to the medical records, they include 42 pages of Mr. Harrison refusing to accept medical treatment, primarily by refusing to go to the Medline when called. *See* Doc. 46-1 at 68–95, 97–111. The records further show that Mr. Harrison is being treated for his various medical conditions, and that he is regularly counseled on improving his diet and exercise while in custody to try to improve his health. *See generally* Doc. 46-1. They do not show that the deterioration in his health is entirely the fault of the Cibola County Correctional Facility, nor do they have a material bearing on the issue of whether there are conditions of release that will reasonably assure Mr. Harrison's future appearance and the safety of the community. And finally, all the letters from family members and friends, while compelling, do not address the circumstances that concerned the Court in the

first place: Mr. Harrison intentionally rammed his car into a law enforcement officer's vehicle so that his son could get away. The fact that he did this once suggests that he might do something similar again.

**IT IS THEREFORE ORDERED** that defendant Ronald Harrison's Opposed Emergency Motion to Reconsider Conditions of Release in Light of Deteriorating Health Conditions (Doc. 46) is denied.

DATED this 16th day of April 2022

_____
Laura Fashing
United States Magistrate Judge